FILED
SEP 03 2013
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

IN RE:

Jeaneen Lesniak — Case No: 07-10934-DHW

Debtor(s)

## APPLICATION FOR UNCLAIMED FUNDS

Dilks & Knopik, LLC, attorney-in-fact for GE Money Bank, claimant, hereby petitions the Court for $596.48, which is the sum of all monies being held in the Registry of the Clerk, United States Bankruptcy Court, as unclaimed funds, which are due to Chevron Credit Bank NA, creditor.

The creditor did not receive the dividend check in the above case for the following reason:

The original dividend check was sent to a Chevron Credit Bank NA. Chevron Credit Bank, National Association sold its credit card business to GE Money Bank, as evidenced by Exhibit A and B.

The claimant/creditor's current mailing address is:

GE Money Bank
Bruce J. Squillante, Controller, Unclaimed Property
4211 Metro Parkway - MS 5A Unclaimed Property
Division
Ft. Myers, FL 33916
239-275-2429
Last four digits of SSN/TIN: 6737

Dated: August 29, 2013

[signature]
Brian J. Dilks, Managing Member
Dilks & Knopik, LLC
35308 SE Center St
Snoqualmie, WA 98065
(425) 836-5728

Sworn and subscribed to, before me
this 29th day of August, 2013

[signature]
Andrew T. Drake, Notary Public
for State of Washington, County of King
Commission Expires: August 9, 2015

ANDREW T. DRAKE
NOTARY PUBLIC
COMMISSION EXPIRES 8-09-15
STATE OF WASHINGTON

**CERTIFICATE OF SERVICE OF APPLICATION ON U.S. ATTORNEY**

Notice is hereby given that on August 29, 2013 a copy of the Application for Release of Unclaimed Funds was served on the U.S. Attorney for the Middle District of Alabama by U.S. Mail at the following addresses:

U.S. Attorney
PO Box 197
Montgomery, AL 36106-0197

Dated: August 29, 2013

Brian J. Dilks, Managing Member
Dilks & Knopik, LLC
Attorney in Fact for GE Money Bank

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| RE: Jeaneen Lesniak | ) | Case: 07-10934-DHW |
| | ) | **AUTHORITY TO ACT** |
| | ) | **Limited Power of Attorney** |
| | ) | **Limited to one Transaction** |
| Debtor(s) | ) | |

**USED ONLY TO COLLECT FUNDS FROM THE ABOVE REFERENCED CASE**

1. **GE Money Bank** with a tax identification number of **06-1236737**, ("CLIENT"), appoints **Dilks & Knopik, LLC** ("D&K"), as its lawful attorney in fact for the limited purpose of recovering, receiving and obtaining information pertaining to the outstanding tender of funds in the amount of **$596.48** (the "FUNDS"), including the right to collect on CLIENT's behalf any such funds that are held by a governmental agency or authority.

2. CLIENT grants to D&K the authority to do all things legally permissible and reasonably necessary to recover or obtain the FUNDS held by the governmental agency or authority. This limited authority includes the right to receive all communications from the governmental agency or authority.

3. D&K may not make any expenditure or incur any costs or fees on behalf of CLIENT without CLIENT's prior written consent.

4. This Authority to Act shall become effective on the below signed date and shall expire upon collection of the aforementioned FUNDS. I authorize the use of a photocopy of this Limited Power of Attorney in lieu of the original.

[signature] 7/31/13, 20____
Signature — Date

Bruce J. Squillante — Controller, Unclaimed Property
Print Name — Title

| Staple Signatory's Business Card Here | Affix Corporate Seal Below |
|---|---|
| | [seal] |

**ACKNOWLEDGMENT**

STATE OF Florida )

COUNTY OF Lee )

On this 31 day of July, 2013, before me, the undersigned Notary Public in and for the said County and State, personally appeared (name) Bruce Squillante known to me to be the person described in and who executed the foregoing instrument, and who acknowledged to me that (circle one) he/she did so freely and voluntarily and for the uses and purposes therein mentioned.
WITNESS my hand and official seal.

NOTARY PUBLIC [signature]

Residing at Collier County

My Commission expires 5/3/2016

**Bruce J. Squillante**
Controller, Unclaimed Property
Payables Solutions

T +1 239 275 2429
F +1 239 278 2588
M +1 616 460 1614
bruce.squillante@ge.com
www.ge.com

4211 Metro Parkway
Fort Myers, FL 33916
USA
General Electric Company


MICHIGAN
DRIVER LICENSE

**UNITED STATES BANKRUPTCY COURT**
**ALABAMA MIDDLE BANKRUPTCY COURT**

| | | |
|---|---|---|
| RE: | ) | Case: 07-10934-DHW |
| Jeaneen Lesniak | ) | |
| | ) | **STATEMENT OF AUTHORITY** |
| Debtor(s) | ) | |

The undersigned being first duly sworn and states that Bruce J. Squillante is the Controller, Unclaimed Property of GE Money Bank. Bruce J. Squillante is authorized to execute and deliver all documents pertaining to the recovery of Unclaimed, Lost or Abandoned Property owing to GE Money Bank or its subsidiaries. I further acknowledge that an Application for Unclaimed Funds will be or has been submitted c/o Dilks & Knopik, LLC to the above bankruptcy court to release funds owing to GE Money Bank.

By: Byron Keirnes Dated 8/12/13

Print Name: Byron Keirnes, Title: Senior Finance Analyst
4211 Metro Parkway - MS 5A Unclaimed Property Division
Ft. Myers, FL 33916
239-275-2429

STATE OF Florida, COUNTY OF Lee

On August 8th 2013 before me, personally appeared Byron Keirnes personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my hand and official seal.

ALEXANDRA UNGUREANU
SEAL MY COMMISSION # EE195374
EXPIRES May 03, 2016
(407) 398-0153 FloridaNotaryService.com

Notary Public [signature]

My commission expires on 5/3/2016

**Comptroller of the Currency**
**Administrator of National Banks**

Licensing Department
Mail Stop 7-13
250 E Street, S.W.
Washington, D.C. 20219

**Conditional Approval #848**
**May 2008**

November 28, 2007

Mr. Michael W. Woody
Chief Financial Officer
Chevron Credit Bank, N.A.
2001 Diamond Boulevard
Concord, California 94520-5737

Re: Material Noncash Contribution to Capital Surplus
OCC Control No.: 2007-WE-12-0220

Disposition of Substantially all the Assets of Chevron Credit Bank, N.A., via a Purchase and Assumption with GE Money Bank, a federal savings bank.
OCC Control No.: 2007-WE-12-0219

Merger of Credit Card Receivables, Inc. with and into Chevron Credit Bank, N.A.
OCC Control No.: 2007-WE-12-0221

Merger of Chevron Credit Bank, N.A., with and into Chevron U.S.A., Inc.
OCC Control No.: 2007-WE-12-0222

Dear Mr. Woody:

The Office of the Comptroller of Currency ("OCC") hereby conditionally approves the above referenced applications. These approvals are granted after a thorough review of the applications, other materials you have supplied, and other information available to the OCC, including commitments and representations made in the applications and by the bank's representatives during the application process. These approvals are also subject to the condition set out herein.

**The Transactions**

These applications are part of a series of transactions in which the credit card business of Chevron Credit Bank, National Association, Murray, Utah, ("CCB") will be sold to GE Money Bank, Salt Lake City, Utah, a federal savings bank, and thereafter the operations and charter of

Exhibit A
Page 1 of 5

CCB will be terminated. CCB is a wholly-owned subsidiary of Chevron U.S.A. Inc. ("CUSA"). As proposed, the following events will occur in sequence on the same business day.

1. CUSA will inject approximately $700 million of credit card receivables into CCB as a contribution to CCB's paid in capital surplus.

2. CCB will transfer substantially all of its assets and all of its insured deposits to GE Money Bank in a purchase and assumption transaction.[1]

3. Credit Card Receivables, Inc., ("CCRI") a wholly-owned subsidiary of CCB, will merge with and into CCB.

4. CCB will merge with and into CUSA, thereby terminating CCB's charter.

**Discussion**

**A. Capital Contribution**

CUSA's injection of $700 million in credit card receivables to CCB is a material noncash contribution to CCB's capital under 12 C.F.R. § 5.46. CCB applied for OCC approval for the noncash contribution to capital under 12 C.F.R. § 5.46(g)(1)(i)(C) & (i). The OCC reviewed the proposed contribution, determined the contribution is consistent with section 5.46, safety and soundness, and OCC policy, and approves the contribution.

**B. Fundamental Change in Asset Composition**

CCB applied to the OCC for prior approval of a fundamental change in its asset composition under 12 C.F.R. § 5.53. Under section 5.53(c)(1)(i), a national bank must obtain prior written approval of the OCC before changing the composition of all, or substantially all, of its assets through sales or other dispositions. In the purchase and assumption transaction with GE Money Bank, CCB will sell all its deposits and substantially all of its assets.

The principal purpose of adopting 12 C.F.R. § 5.53 was to address supervisory concerns raised by so called "dormant" bank charters by providing the OCC with regulatory oversight and a means to monitor them. CCB plans to merge into its nonbank affiliate, CUSA. Thus, OCC concerns over the continuation of "dormant" charters are addressed, and so OCC approval of CCB's application is consistent with the language and purpose of section 5.53.

---

[1] Upon consummation of the purchase and assumption and notification to the Federal Deposit Insurance Corporation of the transfer of all insured deposits from CCB to GE Money Bank, CCB will no longer be FDIC insured pursuant to 12 U.S.C. § 1818(q) and 12 C.F.R. § 307.2. GE Money Bank's participation in the purchase and assumption is subject to approval by the Office of Thrift Supervision, pursuant to the Bank Merger Act, 12 U.S.C. § 1828(c). The Office of Thrift Supervision granted approval on November 16, 2007. The disposition of substantially all of the assets of CCB is also subject to OCC approval pursuant to 12 C.F.R. § 5.53.

**C. Merger of CCRI into CCB**

In this merger, a nonbank subsidiary of CCB will merge into CCB. The merger is authorized under 12 U.S.C. § 215a-3.[2] Section 215a-3 authorizes a national bank to merge with a nonbank subsidiary or affiliate: "Upon the approval of the Comptroller, a national bank may merge with one or more of its nonbank subsidiaries or affiliates." 12 U.S.C. § 215a-3(a), as added by section 1206 of the Financial Regulatory Relief and Economic Efficiency Act of 2000 (Title XII of the American Homeownership and Economic Opportunity Act of 2000), Pub. L. No. 106-569, 114 Stat. 2944, 3034 (December 27, 2000).

The OCC's regulations implementing 12 U.S.C. § 215a-3 set out substantive and procedural requirements for the merger of a nonbank subsidiary or affiliate into the bank. *See* 12 C.F.R. § 5.33(g)(4). The regulation requires that the law of the state or other jurisdiction under which the nonbank affiliate is organized allow the nonbank affiliate to engage in such mergers. The regulation also imposes the following additional requirements that: (1) the bank comply with the procedures of 12 U.S.C. § 215a as if the nonbank affiliate were a state bank, (2) the nonbank affiliate follow the procedures for mergers of the law of its state of organization, and (3) shareholders of the nonbank affiliate have the dissenters' rights provided by the law of the state under which the nonbank affiliate is organized. The regulation also provides that the OCC shall consider the purpose of the transaction, its impact on the safety and soundness of the bank, and any effect on the bank's customers, and may deny a merger if it would have a negative effect in any such respect.

The OCC reviewed the proposed merger of CCRI into CCB and found that all requirements were satisfied. The OCC approves the merger of CCRI into CCB.

**D. Merger of CCB into CUSA**

In this merger, CCB will merge into its parent, CUSA. CUSA will be the surviving entity, and CCB will cease to exist. This merger is authorized under 12 U.S.C. § 215a-3. As set out above, section 215a-3 authorizes a national bank to merge with a nonbank subsidiary or affiliate. The statute does not limit its scope to mergers in which the national bank is the surviving entity, and so a merger *into* a nonbank affiliate is within its scope. The OCC's implementing regulation, discussed below, expressly provides for mergers into a nonbank affiliate. However, the regulation limits these transactions to mergers involving a national bank that is not an insured bank. CCB will not be an insured bank at the time of the merger.

The OCC's regulations implementing 12 U.S.C. § 215a-3 set out substantive and procedural requirements for the merger of an uninsured national bank with its nonbank affiliate in which the

---

[2] Because this merger and the subsequent merger of CCB into CUSA will occur only after CCB is no longer an insured bank, the mergers are not subject to review under the Bank Merger Act, 12 U.S.C. § 1828(c).

ıonbank affiliate is the resulting entity. *See* 12 C.F.R. § 5.33(g)(5). The regulation requires that he law of the state or other jurisdiction under which the nonbank affiliate is organized allow the ıonbank affiliate to engage in such mergers. The regulation also imposes the following additional equirements that: (1) the bank comply with the procedures of 12 U.S.C. § 214a as if it were nerging into a state bank, (2) the nonbank affiliate follow the procedures for mergers of the law of ts state of organization, and (3) shareholders of the national bank who dissent from the merger ıave the dissenters' rights set out in 12 U.S.C. § 214a. The regulation also provides that the OCC shall consider the purpose of the transaction, its impact on the safety and soundness of the bank, ınd any effect on the bank's customers, and may deny a merger if it would have a negative effect in ıny such respect.

The OCC reviewed the proposed merger of CCB into CUSA and found that all requirements vere satisfied. The OCC approves the merger of CCB into CUSA.

**Condition**

These approvals are subject to the following condition:

> If the merger of CCB with and into CUSA does not occur within seven (7) calendar days after the sale of substantially all of CCB's assets to GE Money Bank, CCB shall immediately notify the OCC and submit a plan acceptable to the OCC to wind up its affairs and terminate its status as a national bank.

This condition of approval is a "condition imposed in writing by a Federal banking agency in connection with any action on any application, notice, or other request" within the meaning of 12 U.S.C. § 1818. As such, the condition is enforceable under 12 U.S.C. § 1818.

**Conclusion**

Accordingly, the OCC approves CCB's applications for a material noncash contribution to capital, for a fundamental change in asset composition, for the merger of CCRI into CCB, and for the merger of CCB into CUSA. These approvals are subject to the condition set out above. This conditional approval is also granted based on the information and representations made in the application. In particular, the approvals are based on CCB's representation that the mergers will occur shortly after the purchase and assumption transaction and the termination of CCB's status as an insured bank. In addition, our approval is contingent on CCB and the other parties receiving all other required regulatory approvals.

The OCC will not issue a letter certifying the consummation of the transactions until we have received:

1. Written confirmation that CCB is no longer FDIC insured.

2. CCB's charter certificate, and certification that all OCC Reports of Examination have been returned to the OCC, or destroyed.

3. A copy of the final Certificate of Merger filed with the Delaware Secretary of State.

This conditional approval, and the activities and communications by OCC employees in connection with the filing, do not constitute a contract, express or implied, or any other obligation binding upon the OCC, the United States, any agency or entity of the United States, or any officer or employee of the United States, and do not affect the ability of the OCC to exercise its supervisory, regulatory, and examination authorities under applicable law and regulations. The foregoing may not be waived or modified by any employee or agent of the OCC or the United States.

A separate letter is enclosed requesting your feedback on how we handled your application. We would appreciate your response so we may improve our service.

If you have any questions, contact Senior Licensing Analyst Jim Bundy at 720-475-7650 or at jim.bundy@occ.treas.gov.

Sincerely,

*signed*

Lawrence E. Beard
Deputy Comptroller, Licensing

Enclosure

Exhibit
Page 5

Chevron

Human Energy



# Chevron to Sell Proprietary Credit Card Businesses to GE Money and Fleetcor

SAN RAMON, Calif., Aug 30, 2007 /PRNewswire-FirstCall via COMTEX News Network/ -- Chevron Corporation (NYSE: CVX) today announced that its subsidiaries Chevron U.S.A. Inc. and Chevron Credit Bank, N.A. reached agreements to sell their respective proprietary credit card businesses. Chevron has selected GE Money Bank, N.A. to own and operate its Chevron(R)- and Texaco(R)-branded consumer credit cards and FleetCor Technologies Operating Company, LLC to own and operate its branded commercial credit cards. The transactions are subject to certain approvals, including regulatory, and are expected to close later this year.

"We have a strong base of loyal customers with our proprietary credit card business and are making this change to ensure they continue to have access to the latest features and options available within the credit card market," said Shariq Yosufzai, president of Chevron Global Marketing. "We believe GE Money and FleetCor can enhance the payment products we offer our customers."

Chevron will proactively collaborate with GE Money and FleetCor to continue to manage the overall customer experience, brands and image of its branded credit cards.

"The credit card business environment is changing rapidly," said Danny Roden, vice president of Chevron North America Marketing. "Consumers' usage patterns are changing and they are looking for new payment products and features. Our goal is to provide payment products that attract and retain consumers, marketers and retailers."

Chevron U.S.A. Inc. is an indirect, wholly owned subsidiary of Chevron Corporation. Chevron Credit Bank, N.A. is a partially owned subsidiary of Chevron U.S.A. Inc. Chevron Corporation, one of the world's leading integrated energy companies, has approximately 58,000 employees, and Chevron's subsidiaries conduct business in approximately 180 countries. Chevron operates across the entire energy spectrum-exploring for, producing and transporting crude oil and natural gas; refining, marketing and distributing fuels and other energy products; generating power; designing and marketing large-scale energy efficiency solutions and assessing the energy resources of the future, including biofuels and other renewables. Chevron is based in San Ramon, Calif. More information on Chevron is available at http://www.chevron.com.

With more than $190 billion in assets, GE Money, a unit of General Electric Company (NYSE: GE), is a leading provider of credit services to consumers, retailers and auto dealers in 55 countries around the world. GE Money, based in Stamford, Conn., offers a range of financial products, including private label credit cards, personal loans, bank cards, auto loans and leases, mortgages, corporate travel and purchasing cards, debt consolidation and home equity loans, and credit insurance. More information can be found at http://www.gemoney.com.

FleetCor processes fuel card transactions both domestically and internationally. FleetCor provides card processing solutions marketed for the business fleet marketplace through branded products including CCS, CFN, FleetNet, Fuelman, KeyFuels and Mannatec. More information can be found at http://www.fleetcor.com.

CAUTIONARY STATEMENT RELEVANT TO FORWARD-LOOKING INFORMATION FOR THE PURPOSE OF "SAFE HARBOR" PROVISIONS OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995.

This news release contains forward-looking statements about the planned sales of Chevron's branded consumer and commercial credit card businesses. The statements are based on management's current expectations, estimates and projections; are not guarantees of future performance; and are subject to certain risks, uncertainties and other factors, some of which are beyond the company's control and are difficult to predict. Among the factors that could cause actual results to differ materially are the length of time required to complete the sales; successfully securing the necessary regulatory approvals; actions of the buyers after the planned sales; and general economic and political conditions. You should not place undue reliance on these forward- looking statements, which speak only as of the date of this press release. Unless legally required, Chevron undertakes no obligation to update publicly any forward-looking statements, whether as a result of new information, future events or otherwise.

Exhibit B
Page 1 of 1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

IN RE:

Jeaneen Lesniak — Case No: 07-10934-DHW

Debtor(s)

ORDER TO PAY UNCLAIMED FUNDS

It appearing that the check made payable to Chevron Credit Bank NA, whose last four digits of the social security/tax identification number is 6737, in the amount of $596.48 was not charged against the bank account of the debtor's estate within the 90-day limit pursuant to 11 U.S.C. §347 and an unclaimed money report was entered to close the account and transfer the monies into the registry of the Clerk, United States Bankruptcy Court, and

It further appearing that GE Money Bank now claims the above monies in the petition attached hereto,

IT IS ORDERED that the Clerk of the Bankruptcy Court pay the sum of $596.48, to

GE Money Bank
C/o Dilks & Knopik, LLC
35308 SE Center St
Snoqualmie, WA 98065

Dated: ____________

______________________________
United States Bankruptcy Judge

# DILKS & KNOPIK, LLC

"When Success Matters"

August 29, 2013

United State Bankruptcy Court
Middle Distirct of Alabama
Attn: Janet Clark, Financial Administrator
One Church Street
Montgomery, AL 36104

RE: Application for the Release of Unclaimed Funds

Dear Ms. Clark:

I am applying to the US Bankruptcy Court, Middle District of Alabama for the release of the unclaimed monies due and owing to Chevron Credit Bank NA for the amount of $596.48. This is from the Bankruptcy of Jeaneen Lesniak and Case No. 07-10934-DHW.

Thank you for your attention to this matter.

Sincerely,

BD

Brian J. Dilks

35308 SE Center St
Snoqualmie, WA 98065

Phone (425) 836-5728
Fax (877) 209-8249
Email admin@dilksknopik.com

www.dilksknopik.com